UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.  CRIMINAL NO. 3:18-CR-132-DPJ-LRA

TOMMY JOE HARVEY

ORDER

The Government says Defendant Tommy Harvey, while serving as Simpson County Chancery Court Clerk, violated 18 U.S.C. § 242 when he pepper-sprayed victim A.R. outside the courthouse. Section 242 prohibits anyone acting "under color of any law" from "willfully" depriving another "of any rights, privileges, or immunities secured or protected by the Constitution." According to the Government, the pepper-spraying incident violated A.R.'s Fourth Amendment right to be free from excessive force. The parties have filed four pre-trial motions, and the Court rules as follows as to the first three:[1]

I. Motions in Limine

As summarized by the Fifth Circuit Court of Appeals:

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation marks omitted). Significant here, an order granting a motion in limine does not preclude the party sponsoring the evidence from revisiting the issue at trial. But that party must raise the issue

---

[1] The fourth motion has not yet been fully brief.

outside the jury's presence. *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 3715836, at *2 n.1 (S.D. Miss. Aug. 3, 2018).

    A.    Government's Motion in Limine [56]

In this motion, the Government seeks to exclude evidence related to three subjects: (1) the alleged victim's mental-health history; (2) her alcohol or drug use; and (3) presumptions regarding unavailable witnesses. The Court will address the first two issues together.

    1.    Alleged Victim Characteristics

This incident apparently occurred after A.R. attended a child-custody hearing at the courthouse. According to the Government's motion, A.R. was diagnosed with ADHD and bipolar disorder as a teenager and as recently as September 2016 received treatment for self-harm. The Government also says that at the hearing, A.R. admitted to using drugs within the last 30 days. Harvey would like to explore both issues.

As an initial matter, the Government has not decided whether to call A.R. as a witness, so the Court must consider the impeachment and substantive value of the evidence. If A.R. does testify, then her credibility becomes an issue. And "a defendant has 'the right to attempt to challenge [a witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which [that witness] was attempting to testify.'" *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001) (quoting *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974)). It is therefore error to reject testimony that speaks to a witness's "ability to comprehend, know, and correctly relate the truth." *Id.*; *see also United States v. Wade*, 356 F. App'x 704, 709 (5th Cir. 2009) (applying same test).

But not all mental illnesses cast doubt on the witness's ability to testify accurately. For example, the witness in *Jimenez* suffered from depression and hyperactivity—conditions very similar to those alleged in this case. The trial court excluded the evidence, and the Fifth Circuit affirmed because the conditions failed to establish that the witness "suffered from an impairment affecting his ability to comprehend and tell the truth." 256 F.3d at 344.

In this case, the Court does not know whether A.R.'s ADHD, bipolar disorder, or depression existed during a relevant time; whether such impairments generally impede the ability to "comprehend, know, and correctly relate the truth," *id.*; or whether her symptoms were sufficiently severe to affect those issues. Yet the mention of mental illness would be substantially more prejudicial and confusing than probative in a case where the jury must determine whether the force used was necessary given the victim's conduct. So for now, the motion in limine is granted.

As for the drug use, the Government says it "is not probative of truthfulness." Gov't's Mot. [56] at 5 (quoting *United States v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1990)). But *McDonald* addressed "*past* drug use" offered as character evidence. 905 F.2d at 875 (citing Fed. R. Evid. 608(b)) (emphasis added). Whereas intoxication during relevant events or when testifying at trial would impact credibility. *See, e.g.*, *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978) (explaining that drug use by witness bears upon credibility). Here, A.R. apparently admitted on the day of the incident "to using drugs within the last thirty days." Gov't's Mot. [56] at 1. That is a relatively short time period, so Harvey is entitled to cross-examine A.R. to explore whether she was under the influence of drugs when the incident occurred. He may also explore her condition at trial. The Court will, however, provide an instruction to the jury explaining the proper ways that drug use can be considered.

If A.R. does not testify, then the question becomes whether her mental health and alleged drug use are substantively relevant. This is not, as the Government suggests, improper character evidence if there is reason to believe mental-health issues or intoxication contributed to A.R.'s conduct during the incident. It is axiomatic that mental conditions and drug use can impact behavior. And evidence that A.R. was suffering from a relevant condition at the time of the event might buttress testimony describing how she behaved and therefore whether the force was reasonable given the circumstances.

But there needs to be some evidence that the mental-health issues existed during the relevant time. Otherwise, informing the jury that A.R. suffered from mental illnesses in the past would be substantially more prejudicial and confusing than probative for the same reasons just stated—*i.e.*, the jury might assume she behaved like a mentally ill person when force was applied. *See* Fed. R. Evid. 403.

Finally, the Court may well allow A.R.'s admission regarding drug use into evidence. If, as the Government describes, she admitted using drugs within 30 days, it might be relevant to her conduct leading to the application of pepper spray. It might likewise speak to her reaction to the child-custody hearing. But more facts are needed. Unless the Court has missed it, neither party attached the transcript from the custody hearing or any other record evidence. Yet there are many factual issues that might affect admissibility on this issue, *like* when she took the drugs, what type of drugs, how addictive they are, the regularity with which she used them, and any treatment she may have received. So, while the Court can see the potential relevance, it will

need to hear more.  And because the risk of unfair prejudice is substantial, those issues must be explored outside the jury's presence.  The motion is granted.[2]

        2.        Equally Available Witnesses

The Government seeks an order preventing Defendant from arguing that individuals the Government failed to call as witnesses—specifically A.R. and former FBI Special Agent Jeffrey Artis—would give testimony adverse to the Government's case.

"[A] party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party." *United States v. Wilson*, 322 F.3d 353, 363 (5th Cir. 2003). "There is, however, an important exception to the applicability of the presumption:  if the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible." *Id.* at 353 n.14 (quoting *McClanahan v. United States*, 230 F.2d 919, 925 (5th Cir. 1956)).

"For the presumption to apply, the missing witness must have 'some sort of connection to the party, such that one would expect that the missing witness's testimony would corroborate that party's theory of the case, such as a party's employee or attorney whose legal advice was at issue.'" *Wallner v. Ziegler*, 470 F. App'x 230, 232 (5th Cir. 2012) (quoting *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009)).  The Fifth Circuit has also stated that a witness is not "equally available" if he or she is "controlled by one party" and the testimony "would elucidate facts in issue." *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).

---

[2] The context of the custody hearing may also speak to A.R.'s mental state—not mental health—at the time of the incident.  Until the Court has a more complete picture, it is impossible to fully evaluate the relevance of this evidence.

Starting with A.R., Harvey claims that she is not equally available because she has a "special relationship" with the Government. Def.'s Resp. [73] at 8. But at this point, he has not demonstrated that A.R.'s relationship with the Government is of the caliber that has triggered the inference in other cases, like an employee or an attorney. *See Wallner*, 470 F. App'x at 232. The most analogous example is *United States v. Santos*, where the Fifth Circuit affirmed the district court's decision to reject a missing-witness instruction related to the victim because the victim "was not controlled by the Government during trial[.]" 589 F.3d at 764. The *Santos* court also noted that the defendant could have called the witness. *Id.*; *see also IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (finding no basis for inference because "either party could have called" the missing witness). The same is true here.

As for Artis, the Government says that he is no longer employed by the FBI, he was not present at the scene, and his testimony would at best be cumulative. Harvey addresses the first issue and to some extent the second, but he merely asks the Court to overlook the third. Nevertheless, in *Wilson*, the Fifth Circuit held: "The court can only draw a negative inference when the missing witness has information 'peculiarly within his knowledge,' i.e., a party need not call a witness if her testimony would be cumulative, and the strength of the inference to be drawn from the witness's absence varies with the particular facts of each case." 322 F.3d at 362; *see also Hacker v. Cain*, 759 F. App'x 212, 218 (5th Cir. 2018) (finding no basis for negative inference where party failed to call cumulative witnesses). The Court finds that the motion should be granted.

That said, these are fact-specific issues that might change as the evidence develops. For example, as discussed next, Artis might be the only witness with evidence regarding an alleged death threat. If that alleged threat somehow gets into evidence, then the missing-witness

inference might become a closer question.  Again, orders granting motions in limine may be revisited outside the jury's presence.

> B. Defendant's Motion in Limine to Exclude Allegations of Witness Intimidation [58]

Harvey fears that two potential witnesses may say he attempted to intimidate them and thereby tamper with the evidence.  First, Deputy Clay McPherson reported that he felt threatened when he received two Facebook friend requests from men with the last name "Harvey."  Def.'s Mem. [59] at 1.  Harvey claims in his motion that he sent neither request—one was from his son and one was from someone with whom he has no relation.  *Id.* at 3.  In the other incident, a rumor started that witness Jamie Brewer received a death threat, but Brewer allegedly denied the threat when interviewed by Special Agent Artis.  *Id.* at 1–2.

In its response, the Government states that it will not elicit this testimony, but that it should not be excluded if the witnesses want to volunteer it.  According to the prosecution, the evidence may speak to Harvey's consciousness of guilt while also bolstering the witnesses' credibility since they may be testifying under duress.

The two incidents are very different in tone.  A Facebook friend request is fairly innocuous, whereas a death threat is not.  But there is currently no dispute that Harvey did not send the friend requests, and the death threat is apparently based on rumor.  Absent some evidence linking either event to Harvey, they would not reflect a consciousness of guilt.  Nor would the alleged incidents suggest tampering.  They would, however, be highly prejudicial if heard by the jury because the events might suggest tampering where no foundation has been laid.  This is especially true of the rumored death threat, which may also suffer hearsay problems.  Accordingly, the Court concludes that absent a factual foundation, mention of these incidents would be substantially more prejudicial than probative.  The motion is granted.

C. Defendant's Motion in Limine Regarding Use of Force [60]

As noted above, the Government says Harvey violated § 242 by spraying A.R. with pepper spray outside the Simpson County Courthouse. Harvey now seeks an order prohibiting witnesses from opining whether his conduct was unreasonable under the circumstances. The Government agrees with the motion to an extent, "agree[ing] that a witness may not testify to a legal conclusion that is within the province of the jury." Gov't's Resp. [74] at 1 (citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)). But it believes the lay witnesses should be allowed to explain what they saw.[3]

Under Rule of Evidence 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." But there are limits; the rule "does not allow a witness to give legal conclusions," and for that reason, "determinations of guilt or innocence are solely within the province of the trier of fact." *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). "Accordingly, a lay witness's opinion that a defendant is guilty of the crime charged would be improper trial testimony." *United States v. Keys*, 747 F. App'x 198, 208 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 847 (2019).

"[S]eparating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile [task]." *Id.* (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). The distinction lies "between an impermissible opinion on an ultimate legal issue and 'a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue.'" *United States v. Buchanan*, 70 F.3d 818, 833 n.20

---

[3] It is not clear what the officers will say, but if they preface their testimony on their specialized knowledge and training in law enforcement, then Rule 702 may apply. For now, the Court will assume the officers are testifying merely as fact witnesses offering lay opinions.

(5th Cir. 1995) (quoting *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994)). As explored in *Keys*, the advisory-committee notes to Rule 704 provided a helpful example:

> While the question (1) "Did T have capacity to make a will?" would be improper, the question (2) "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. Fed[.] R. Evid. 704 advisory committee's note to 1972 proposed rule.
>
> . . . "A direct response [to the first question], whether it be negative or affirmative, would supply the jury with no information other than the witness's view of how its verdict should read." *Owen*, 698 F.2d at 240. The second formulation is permissible because it is not explicitly framed as a request for an opinion "phrased in terms of inadequately explored legal criteria." Fed[.] R. Evid. 704 advisory committee's note to 1972 proposed rules. Rather, it breaks down the question of testamentary capacity—a question that has a specific legal meaning—into its discrete elements.

747 F. App'x at 208.

In this case, there are two easy parameters. On one end, witnesses may not testify whether they thought the force was reasonable, unreasonable, excessive, or justified. *See United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (holding in § 242 case that the district "court erred under rule 704(a) by allowing the officers' testimony about the reasonableness of the shooting"). On the other, they may testify about what they saw, for example, whether A.R. was still resisting when Harvey allegedly applied the pepper spray. Between those guideposts, the issues become more difficult, and the Court must hear the questions before deciding whether to allow the witnesses to answer.

II. Conclusion

The Court has considered all arguments. For the foregoing reasons, the Government's Motion in Limine [56] is granted; Defendant's first Motion in Limine [58] is granted; and the

Defendant's Second Motion in Limine [60] is granted in part.

**SO ORDERED AND ADJUDGED** this the 10th day of September, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE