UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.  CRIMINAL NO. 3:18-CR-132-DPJ-LRA

TOMMY JOE HARVEY

ORDER

The Government says Defendant Tommy Joe Harvey, while serving as Simpson County Chancery Court Clerk, violated 18 U.S.C. § 242 when he pepper-sprayed victim A.R. outside the courthouse. Section 242 prohibits anyone acting "under color of any law" from "willfully" depriving another "of any rights, privileges, or immunities secured or protected by the Constitution." According to the Government, the pepper-spraying incident violated A.R.'s Fourth Amendment right to be free from excessive force.

Harvey has designated Dr. Ron Martinelli to offer opinions primarily related to the characteristics of pepper spray and how exposure to it might have affected A.R. Dr. Martinelli is a former law-enforcement officer who holds a Ph.D. in Criminology. He is also a forensic criminologist and a "Certified Medical Investigator," though it does not appear that he has any medical training. The question is whether his opinions satisfy Federal Rule of Evidence 702.

I.  Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 "requires trial courts to ensure that proffered expert testimony is 'not only relevant, but reliable.'" *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 329 (5th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "To determine reliability, the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue.'" *Id.* (quoting *Daubert*, 509 U.S. at 590–91).

The Court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). This gatekeeper function does not, however, replace a trial on the merits. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

II.     Analysis

Dr. Martinelli's report contains a "Findings & Opinion" section that offers three general opinions supported by additional findings. The Government describes those general opinions as: "(1) his judgment of what happened when Harvey pepper-sprayed A.R.; (2) a conclusion that A.R.'s account of her injuries is not 'completely supported by the medical evidence'; and (3) a conclusion that pepper spray is not a dangerous weapon." Gov't's Mot. [81] at 2. Each is disputed.

2

A.     Opinions Regarding the Facts

In "Findings & Opinion No. 1" of his report, Dr. Martinelli provides the following:

> Based upon my review of the discovery evidence . . . and in consideration of my law enforcement, forensic and chemical agents education, training and experience, I find and opine to a reasonable degree of professional certainty that *the following circumstances occurred* at the time that defendant Harvey sprayed victim Robertson with an CS/OC-based chemical agent[.]

Martinelli Report [83-1] at 89 (emphasis added). He then lists eight factual findings, some with subparts. *Id.* at 90–92. Those factual findings fall into two basic categories: (1) opinions about what happened on April 27, 2018, and (2) opinions regarding the characteristics of the pepper spray Harvey used.

Starting with his what-happened findings, there are two fundamental problems: the report invades the province of the jury and presents hearsay evidence as expert opinion. First, experts are entitled to opine on facts when their expertise would assist the jury. *See United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987) (allowing expert in tax-evasion case to opine regarding the defendant's net worth), *aff'd in pertinent part on reh'g*, 821 F.2d 1034 (1987). But experts "may not form conclusions for a jury that they are competent to reach on their own." *United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015) (quoting *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013)).

In this case, Dr. Martinelli has read the materials defense counsel provided, most of which are out-of-court statements from various witnesses. Martinelli Report [83-1] at 85. Based on those materials, he opines that "the following circumstances occurred." *Id.* at 89. Generally, he hopes to tell the jury when, where, how, and how often Harvey pepper-sprayed A.R. Dr. Martinelli's take on the facts might be proper if introduced as the factual assumptions upon which he based his other opinions. But he may not offer them as presented in his report—i.e., as

opinions on what actually occurred. *See United States v. Johnson*, No. 2:13-CR-151 JCM (VCF), 2013 WL 6579578, at *5 (D. Nev. Dec. 13, 2013) (striking similar factual opinions from Dr. Martinelli because "[n]othing in his testimony indicated that he possessed any specialized knowledge that would be necessary or even helpful to the jury").

The other problem regarding the what-happened opinions is that they present hearsay evidence to the jury as fact. Under Rule 703, an expert may base an "opinion on facts or data in the case that the expert has been made aware of," but otherwise inadmissible facts or data may be disclosed to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Thus, an expert "cannot be used as a means to introduce inadmissible evidence by merely summarizing or repeating the information in court." Weissenberger's Federal Evidence § 703.5.

That is what Dr. Martinelli proposes, and for that reason, other courts have rejected his factual opinions. *See Logsdon v. Duarte* No. 15-CV-914-MCA-CG, 2017 WL 4179993, at *2 (D.N.M. Sept. 19, 2017) (striking opinions and holding that "[t]he narrative portions of Dr. Martinelli's report . . . are not based on personal knowledge[ ] and . . . constitute inadmissible hearsay to the extent that they are offered to illustrate the truth of the underlying circumstances"). The same is true here.

In sum, Dr. Martinelli may not opine on what happened. The jurors are perfectly capable of forming their own opinions, and they will do so based on the admissible evidence rather than hearsay materials counsel compiled for Dr. Martinelli's review. Dr. Martinelli may, however, explain *relevant* factual assumptions he made to support his other opinions.[1]

---

[1] Even when presented as foundational assumptions, the Court has some concern about other statements in his report. For example, Dr. Martinelli says Harvey purchased the pepper spray for his wife. Martinelli Report [83-1] at 87. That statement may be significant to the color-of-law

Regarding the characteristics of the pepper spray Harvey used, those opinions would be helpful to the jury. Unlike opinions on what factually occurred, testimony regarding the chemicals used in pepper spray and how they react with humans would likely fall beyond the knowledge of most jurors. Moreover, the Court is satisfied that Dr. Martinelli possesses the expertise to render the opinions and that they are generally based on sufficient methodology. As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. The Court will, however, need to hear from Dr. Martinelli regarding the methodology supporting his "overspray" theory and will do so after the close of the Government's case in chief.

B.  Medical Testimony

"Findings & Opinion No. 2" addresses A.R.'s alleged injuries and begins with the following core opinion:

> [A.R.'s] statements of her alleged injuries caused by defendant Harvey through his applications of chemical agents upon her are not completely supported by the medical evidence. [A.R.'s] alleged injuries can be otherwise explained by non-chemical agent causes.

Martinelli Report [83-1] at 92. Dr. Martinelli supports that opinion with three additional findings with multiple subparts. *Id.* at 92–94.

For the most part, he says the symptoms A.R. claimed after the incident may have been caused by something other than exposure to pepper spray. For example, A.R. complained of

---

element under § 242 but has less relevance to the expert opinions. More troubling, it would allow Harvey to present hearsay evidence while avoiding cross-examination. The Court will monitor such issues at trial.

headaches, which can result from pepper spray, but Dr. Martinelli opines that "headaches are commonly associated with a variety of psycho-medical problems." *Id.* at 92.

The Government argues that Dr. Martinelli lacks the expertise to render such opinions and that the opinions themselves lack the degree of certainty necessary for admission into evidence. Gov't's Mot. [81] at 9 (citing *Davies v. City of Lakewood*, No. 14-cv-01285-RBJ, 2016 WL 614434, at *8 (D. Colo. Feb. 16, 2016) ("[Dr. Martinelli] has no evident medical expertise that would enable him to express opinions with medical certainty."). There is a legitimate question whether Dr. Martinelli's opinions—as worded in his report—exceed his expertise when he addresses medical causation. *See Davies*, 2016 WL 614434, at *8.

In addition, some of what he says may not be relevant. A major take-away from this section of his report is that A.R. may not have suffered "serious bodily injury." Martinelli Report [83-1] at 92. But the Government need not prove such injury. To establish the fourth element of a § 242 claim, the Government may prove *either* that A.R. suffered "bodily injury" *or* that Harvey used a "dangerous weapon." *United States v. Harris*, 293 F.3d 863, 870 (5th Cir. 2002).

If the Government attempts to make its case through the "bodily injury" approach, then it need not show A.R. suffered "serious bodily injury." *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (explaining that an injury relating to excessive force need only be more than *de minimis*). "Bodily injury," as defined in the pattern instructions, means "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) *physical pain*; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, *no matter how temporary*." Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.12 (2015) (emphasis

added).² Even Dr. Martinelli seems to support a finding of bodily injury under this standard. *See* Martinelli Report [83-1] at 90 ("The evidence indicates that [A.R.] was definitely exposed/influenced by the presence of [pepper spray,] . . . she complained of classic [pepper-spray] symptoms to include intense burning of her eyes and skin.").

The term "serious" comes into the case only if the Government tries to prove that Harvey used a "dangerous weapon," which is defined "an instrument capable of inflicting death or serious bodily injury." Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.07 (2015). That element looks to the weapon's capability, not the actual harm to the alleged victim. *Id.* In other words, failing to establish that A.R. suffered serious bodily injury is not a defense to the claim that pepper spray is a dangerous weapon, though it might offer circumstantial proof that it is not. Thus, if the Government elects at trial to pursue the fourth element through proof of "bodily injury" rather than use of a "dangerous weapon," then these opinions may lose relevance.

Such decisions are best left for the close of the Government's case in chief. Accordingly, the Court will conduct a *Daubert* hearing at that time to determine whether Dr. Martinelli intends to offer the opinions in this section of his report, and if so, whether they remain relevant, fall within his expertise, and are based on sufficient methodology.

C. Whether Pepper Spray is a Dangerous Weapon

In "Findings & Opinion No. 3," Dr. Martinelli opines that the pepper spray "used by defendant Harvey in influencing victim [A.R.] is not a 'dangerous weapon.'" Martinelli Report [83-1] at 94. He then lists eleven separate findings—again with subparts—supporting this opinion. *Id.* at 94–96.

---

² Both parties submitted instructions that track this pattern instruction.

As noted, proof that the defendant used a "dangerous weapon" is an alternative way to establish the fourth element of a § 242 offense. So, Dr. Martinelli's core opinion states that the Government has not met this element. Under Rule of Evidence 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." But there are limits; the rule does not allow express opinions regarding the elements of the offense. *See, e.g.*, *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (holding that trial court erred by allowing witnesses to testify whether force was reasonable).

"[S]eparating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile [task]." *United States v. Keys*, 747 F. App'x 198, 208 (5th Cir. 2018) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)), *cert. denied*, 139 S. Ct. 847 (2019). The distinction lies "between an impermissible opinion on an ultimate legal issue and 'a mere explanation of the [witness's] analysis of facts which would tend to support a jury finding on the ultimate issue.'" *United States v. Buchanan*, 70 F.3d 818, 833 n.20 (5th Cir. 1995) (quoting *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994)).

As explored in *Keys*, the advisory-committee notes to Rule 704 provided a helpful example:

> While the question (1) "Did T have capacity to make a will?" would be improper, the question (2) "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. Fed[.] R. Evid. 704 advisory committee's note to 1972 proposed rule.
>
> . . . "A direct response [to the first question], whether it be negative or affirmative, would supply the jury with no information other than the witness's view of how its verdict should read." *Owen*, 698 F.2d at 240. The second formulation is permissible because it is not explicitly framed as a request for an opinion "phrased in terms of inadequately explored legal criteria." Fed[.] R. Evid. 704 advisory committee's note to 1972 proposed rules. Rather, it breaks down the question of testamentary capacity—a question that has a specific legal meaning— into its discrete elements.

747 F. App'x at 208.  In this case, the basic opinion that pepper spray "is not a dangerous weapon" falls squarely under the first example.  Martinelli Report [83-1] at 94.  Dr. Martinelli is merely telling the jury how to rule on an element of the offense.

But not every finding in this section suffers the same defect.  Findings 1–6 and 9 inform the jury about pepper spray's various characteristics, and they do not provide a legal conclusion.  Moreover, the findings fall beyond a layperson's general knowledge, and Dr. Martinelli possesses the expertise to offer this testimony.  As for methodology, the findings themselves are more descriptive in nature and the sources seem sufficient to overcome the challenge.

The remaining findings have issues.  Starting with finding 7, Dr. Martinelli offers two points, both improper.  First, he states that he "finds no evidence that Harvey intended to cause serious bodily harm/injury to" A.R.  Martinelli Report [83-1] at 95.  To begin, the testimony regarding Harvey's intent is pure speculation.  Moreover, Dr. Martinelli's opinion does not relate to the correct legal standard.  Section 242's intent element requires proof that Harvey willfully violated A.R.'s rights.  Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.12 (2015).  So Dr. Martinelli is attempting to discuss an irrelevant intent standard, making the opinion substantially more prejudicial and confusing than probative.  Fed. R. Evid. 403.  Finally, even if Dr. Martinelli's opinion relates to a relevant intent standard, Federal Rule of Evidence 704(b) would preclude it.

The second half of finding 7 states that there is no evidence "Harvey repeatedly used/applied the chemical agent in a manner that created the impression that the chemical agent as an instrument could inflict death or serious bodily injury."  Martinelli Report [83-1] at 95.  Again, this does not appear to state a relevant legal standard.  Neither party submitted an instruction defining "dangerous weapon" in this way, and the Government is not attempting to

9

prove the pepper spray was a dangerous weapon based on an "impression." Absent relevance, the opinion is substantially more prejudicial and confusing than probative. Fed. R. Evid. 403.

Finding 8 likewise contains more than one opinion. In it, Dr. Martinelli first states, "There is no evidence that defendant Harvey repeatedly exposing [A.R.] to short bursts of the CS/OC-based chemical agent created 'a substantial risk of death' to [A.R.]" Martinelli Report [83-1] at 95. But again, that is not the legal standard, nor is it disputed. The opinion would be substantially more confusing than probative. He next states that "[t]here is no medical evidence, that I have reviewed, that forensically documents nor proves that [A.R.] has suffered 'protracted or obvious disfigurement[']; nor any 'protracted loss or impairment of the function of a bodily member, organ, or mental faculty' as a sole result of being repeatedly exposed to the chemical agent over a very short period of time." *Id.* The legal question is not whether A.R. suffered such an injury but whether the pepper spray is capable of creating such harm. *See United States v. Olarte-Rojas*, 820 F.3d 798, 801–02 (5th Cir. 2016). For that reason, the opinion is substantially more prejudicial and confusing than probative, and it has the same issues identified above, i.e., whether Dr. Martinelli possesses the relevant expertise and whether this issue will even be disputed.

Finally, findings 10 and 11 recount certain "facts" Dr. Martinelli gleaned from the materials defense counsel provided regarding A.R.'s alleged injuries. These opinions are like those in the second "Findings & Opinion" section of the report and will be treated the same.

III. Conclusion

For the foregoing reasons, the Motion to Exclude [81] is granted in part and denied in part.

10

**SO ORDERED AND ADJUDGED** this the 16th day of September, 2019.

                                                s/ *Daniel P. Jordan III*
                                                CHIEF UNITED STATES DISTRICT JUDGE